## No. 21-7609

# United States Court of Appeals for the Fourth Circuit

---

**JUSTIN M. LONGWORTH,**

*Appellant,*

**v.**

**A. MANSUKHANI, ANTHONY T. SCARANTINO, PATRICK, BURRELL, MATTHEW W. HAUGHT, and SHERRY M. BECK,**
*Appellees.*

---

*On Appeal from the United States District Court for the Eastern District of North Carolina*

---

## RESPONSE BRIEF OF DEFENDANT-APPELLEES MANSUKHANI, SCARANTINO, BURRELL, and HAUGHT

---

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:     SHARON C. WILSON
*Assistant United States Attorney*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530

*Attorney for Appellees Mansukhani, Scarantino, Burrell, and Haught*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................ii

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF ISSUES ............................................................ 2

STATEMENT OF CASE.................................................................. 3

STATEMENT OF FACTS ............................................................... 4

SUMMARY OF ARGUMENT........................................................ 8

ARGUMENT..................................................................................... 9

    I.    STANDARD OF REVIEW. ............................................... 9

    II.   THE DISTRICT COURT PROPERLY DISMISSED
        LONGWORTH'S EIGHTH AMENDMENT CLAIMS
        AS NOT COGNIZABLE UNDER *BIVENS*. ................................... 9

        A.    Egbert and the Bivens Framework. ............................. 10

        B.    Longworth's Claims Arise in a New Bivens Context.................... 12

        C.    Special Factors Counsel Against Allowing
            Longworth's Eighth Amendment Claims to Proceed. .................. 19

CONCLUSION................................................................................ 38

CERTIFICATE OF COMPLIANCE ........................................... 39

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Anderson v. Creighton*,
   483 U.S. 635 (1987)................................................................. 33

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009) ..............................................20, 37

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................. 10

*Bell v. Hood*,
   327 U.S. 678 (1946)................................................................. 29

*Bell v. Wolfish*,
   441 U.S. 520 (1979)................................................................. 33

*Bistrian v. Levi*,
   912 F.3d 79 (3d Cir. 2018) ..................................................... 18

*Bivens v. Boyd*,
   No. 9:22-CV-4553-SAL, 2023 WL 6540905 (D.S.C. Oct. 6, 2023) .............. 25

*Bivens v. Boyd*,
   No. CV92204553SALMHC, 2023 WL 6542259 (D.S.C. Mar. 22, 2023) ..... 25

*Bivens v. Six Unknown Federal Narcotics Agents*,
   403 U.S. 388 (1971)...........................................................passim

*Bulger v. Hurwitz*,
   62 F.4th 127 (4th Cir. March 3, 2023) .................................passim

*Bush v. Lucas*,
   462 U.S. 367 (1983)................................................................. 19

*Byrd v. South Carolina Dep't of Corr.*,
   No. 5:11-3340-MGL, 2013 WL 5309759 (D.S.C. Sept. 19, 2013) .............. 25

*Cagle v. Hutto*,
   177 F.3d 253 (4th Cir. 1999) ................................................... 24

*Callahan v. Fed. Bureau of Prisons*,
    965 F.3d 520 (6th Cir. 2020) ...............................................................28, 33

*Carlson v. Green*,
    446 U.S. 14 (1980) ...........................................................................passim

*Chappell v. Wallace*,
    462 U.S. 296 (1983)................................................................................ 37

*Corr. Servs. Corp v. Malesko*,
    534 U.S. 61 (2001) ...........................................................................passim

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)................................................................................ 36

*Crowder v. Jones*,
    No. 14-cv-00202, 2017 WL 5889717 (S.D. In. Nov. 29, 2017).................... 31

*Cruz v. Beto*,
    405 U.S. 319 (1972)................................................................................ 34

*Davis v. Passman*,
    442 U.S. 228 (1979)..........................................................................passim

*De La Paz v. Coy*,
    786 F.3d 367 (5th Cir. 2015) ................................................................... 35

*De'lonta v. Clarke*,
    No. 7:11-CV-00483, 2013 WL 209489 (W.D. Va. Jan. 14, 2013) ................ 25

*Dyer v. Smith*,
    56 F.4th 271 (4th Cir. 2022) ......................................................... 19, 31, 35

*Earle v. Shreves*,
    990 F.3d 774 (4th Cir. 2021) ..............................................................10, 33

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022).......................................................................passim

*Farmer v. Brennan*,
    511 U.S. 825 (1994)...............................................................14, 17, 18, 19

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..................................................................33, 35

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ................................................. 10, 12, 13

*Hernandez v. Mesa*,
    885 F.3d 811 (5th Cir. 2018) .................................................. 37

*Herring v. S.C. Dep't of Corr.*,
    No. CV 1:20-2909-MBS-SVH, 2020 WL 4904823 (D.S.C. Aug. 20, 2020) .. 25

*Hill v. Hickman County Jail*,
    2015 WL 5009301 (M.D. Tenn. August 21, 2015) ..................................... 25

*Kerr v. Marshall Univ. Bd. of Governors*,
    824 F.3d 62 (4th Cir. 2016) ......................................................... 9

*Mays v. Smith*,
    70 F.4th 198 (4th Cir. 2023) ...............................................passim

*Montcalm Pub. Corp. v. Commonwealth of Va.*,
    199 F.3d 168 (4th Cir. 1999) ..................................................... 24

*Moody v. Daggett*,
    429 U.S. 78 (1976) ................................................................... 26

*Schweiker v. Chilicky*,
    487 U.S. 412 (1988)........................................................ 20, 21, 29

*Sheppard v. Visitors of Va. State Univ.*,
    993 F.3d 230 (4th Cir. 2021) ...................................................... 9

*Tankersley v. Almand*,
    837 F.3d 390 (4th Cir. 2016) ...................................................... 9

*Tate v. Harmon*,
    54 F.4th 839 (4th Cir. 2022)...............................................passim

*Tun-Cos v. Perrotte*,
    922 F.3d 514 (4th Cir. 2019) ...................................... 18, 24, 29

*Turner v. Safley*,
  482 U.S. 78 (1987) ........................................................... 31, 32

*United States v. Stanley*,
  483 U.S. 669 (1987) ............................................................ 29

*Vanderklok v. United States*,
  868 F.3d 189 (3d Cir. 2017) ................................................. 35

*Vega v. United States*,
  881 F.3d 1146 (9th Cir. 2018) ............................................. 26

*Wilkie v. Robbins*,
  551 U.S. 537 (2007)....................................................... passim

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)................................................ 8, 10, 13

### Statutes

18 U.S.C. § 3621............................................................ 22, 23

18 U.S.C. § 3621(b)............................................................. 25

18 U.S.C. § 3625................................................................. 26

18 U.S.C § 3626(a)(2) .......................................................... 29

18 U.S.C. § 4042(a).......................................................... 22, 25

28 U.S.C. § 1291................................................................. 1

28 U.S.C. § 1346(b)............................................................. 30

28 U.S.C. § 2241................................................................. 30

28 U.S.C. § 2671................................................................. 30

34 U.S.C. § 30301(13).......................................................... 25

34 U.S.C. § 30301................................................................ 24

34 U.S.C. § 30302(7)........................................................... 25

42 U.S.C. § 1983 ................................................................ 23

42 U.S.C. § 1997c(a)(1) ................................................... 23

42 U.S.C. § 1997e(a) ........................................................ 28

### Rules

Fed. R. App. P. 28(e) ......................................................... 1

Fed. R. App. P. 30 .............................................................. 1

### Regulations

5 C.F.R. § 2635.101(b)(11) ............................................ 31

5 C.F.R. § 2635.106 ......................................................... 31

28 C.F.R. § 45.11(b) ........................................................ 31

28 C.F.R. § 542.10 ........................................................... 27

28 C.F.R. § 542.15 ........................................................... 37

28 C.F.R. § 542.18 ........................................................... 28

## STATEMENT OF JURISDICTION

Appellant, Justin M. Longworth (Longworth), appeals the district court's dismissal of his action for failure to state a claim. The district court granted Defendant-Appellees Mansukhani, Scarantino, Burrell, and Haught's motions on September 29, 2021. Docket Entry No. ("D.E.") 71.[1]  Longworth timely filed a notice of appeal on November 11, 2021. D.E. 73. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] This Court set an informal briefing schedule, ECF No. 16, and docketed the district court's record, ECF No. 18. Later, this Court granted Longworth "leave to file a brief in the format prescribed by Federal Rule of Appellate Procedure 28," but deferred action on resuming a formal briefing schedule and did not direct the parties to file a joint appendix, ECF No. 28, which is not governed by Rule 28. *See* Fed. R. App. P. 30. Longworth's brief cites to the docketed record. Because the record is not consecutively paginated, citation herein is by docket entry and page number or—in the case of the amended complaint—paragraph. *See* Fed. R. App. P. 28(e).

## STATEMENT OF ISSUES

1.    The district court properly dismissed Longworth's Eighth Amendment failure to protect claims against Appellees Mansukhani, Scarantino, Burrell, and Haught and the failure to train/supervise claims against Appellees Mansukhani and Scarantino because such claims are not cognizable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and its progeny.

## STATEMENT OF CASE

On July 2, 2019, Longworth filed the complaint against A. Mansukhani (Mansukhani), Anthony T. Scarantino (Scarantino), Patrick Burrell (Burrell), and Matthew W. Haught (Haught) (collectively, Appellees), alleging violations of the Eighth Amendment under *Bivens* and its progeny. D.E. 1. Longworth also alleged Fourth and Eighth Amendment violations under *Bivens* and its progeny and state tort claims against Sherry M. Beck (Beck), who proceeds *pro se*. D.E. 1.

On May 12, 2020, Mansukhani filed a motion to dismiss for failure to state a claim. D.E. 23. In support of the motion, Mansukhani filed a memorandum of law. D.E. 24.

On June 1, 2020, Longworth filed an amended complaint realleging Eighth Amendment violations against Appellees, and Fourth and Eighth Amendment violations and state tort claims against Beck. D.E. 28.

On September 4, 2020, Mansukhani, Burrell and Haught, and Scarantino filed motions to dismiss for failure to state a claim. D.E. 45, 48, 50, respectively. In support of their motions, Appellees filed memoranda of law. D.E. 46, 49, 51, respectively. On October 27, 2020, Longworth filed responses. D.E. 53—55. Appellees filed replies. D.E. 60-62.

On February 22, 2021, Beck filed an answer. D.E. 67.

On September 29, 2021, the district court granted the motions to dismiss the *Bivens* claims for failure to state a claim. D.E. 71.

On November 11, 2021, Longworth filed a notice of appeal. D.E. 73.

## STATEMENT OF FACTS[2]

The facts alleged in amended complaint may be summarized as follows. Longworth entered Federal Bureau of Prisons ("FBOP") custody on or about May 10, 2016, at the Federal Correctional Institution in Sheridan, Oregon. D.E. 28, ¶¶ 20–21. During the intake interview, Longworth disclosed that he was sexually abused as a child, which FBOP officials documented in his file. *Id.*, ¶ 22. Longworth noted also that he suffers from bi-polar disorder, post-traumatic stress disorder, and borderline personality disorder. *Id.*, ¶ 23. He has a history of multiple suicide attempts and takes psychotropic medications for the foregoing conditions. *Id.*

On July 22, 2016, FBOP officials transferred Longworth to FCI-Butner. *Id.*, ¶ 24. On February 17, 2017, Longworth began an inmate work assignment as a plumber for the facilities department. *Id.*, ¶ 25. He received multiple positive evaluations from his supervisors throughout his time at this assignment. *Id.* Burrell was a plumber for the facilities department, and Longworth's direct supervisor. *Id.*, ¶ 10. Haught was a maintenance mechanic who worked closely alongside Longworth and Burrell and Beck. *Id.*, ¶ 11. At the time of the alleged abuse, Mansukhani was the FCI-Butner warden, and Scarantino was a correctional administrator. *Id.*, ¶¶ 8–9.[3]

---

[2] Factual allegations are assumed to be true for purposes of the motions to dismiss.

[3] Scarantino disputes that he was a correctional administrator or a warden (as Longworth alternatively describes him in the amended complaint) during the

Beck, the FCI-Butner secretary of facilities, managed the payroll of all inmate employees when Longworth was employed as a plumber. *Id.*, ¶ 26. She allegedly developed an inappropriate interest in Longworth during this time, which advanced to "daily aggressive sexual harassment and sexual abuse." *Id.*, ¶ 27. According to the amended complaint, Longworth initially, and repeatedly, rejected her advances but ultimately was unsuccessful in his attempts to abate her conduct. *Id.* The sexual abuse allegedly progressed to forced oral sex, groping of the genitals, kissing, and biting. *Id.*, ¶ 28. Beck also allegedly forced Longworth to perform these same acts on her. *Id.*

According to the amended complaint, the abuse occurred in both the main offices of the facilities department and the "attic" where Beck allegedly would lure Longworth by pretending to need assistance with work-related tasks. *Id.*, ¶ 29. Although Beck allegedly spent an unusual amount of time alone with Longworth, Mansukhani, Scarantino, Burrell, and Haught did nothing to intervene or otherwise stop or report the abuse. *Id.*

Longworth did not initially report the abuse. *Id.*, ¶ 30. Beck allegedly "ensured [Longworth's] silence through continuous manipulation, coercion and bribery." *Id.* At one point, Beck asked Longworth to tattoo her initials and retirement date on his body in exchange for her removing her wedding ring. *Id.*

---

relevant time. (Scarantino Decl. (D.E 50-2)). Scarantino was a housing unit administrator. (*Id.*). This factual dispute is not capable of resolution at the motion to dismiss stage and is not relevant to resolution of the issue presented.

Although tattooing is prohibited by FBOP policy, Longworth complied with this request out of fear of reprisal by Beck. *Id.*

On an unidentified date "long after the abuse had started," Haught reported Beck's conduct to her facilities supervisors.[4] *Id.*, ¶ 32. Haught, however, did not report the misconduct to his personal superiors, a special investigative agent, Mansukhani, or Scarantino as required by FBOP policy. *Id.*

On September 26, 2018, Longworth was fired from his work assignment in the facilities department. *Id.*, ¶ 33. At the direction of Mansukhani and Scarantino, Longworth was transferred to the special housing unit, also known as administrative segregation. *Id.* Mansukhani and Scarantino did not discipline Beck or provide Longworth with counseling as required under the Prison Rape Elimination Act ("PREA"). *Id.*, ¶ 34.

On September 28, 2018, Longworth reported Beck's conduct to an FBOP special investigative agent. *Id.*, ¶ 36. Several days later, Beck was terminated from her FBOP employment. *Id.*, ¶ 37. However, to Longworth's knowledge, no further legal, criminal, or disciplinary action has been taken against Beck. *Id.*

On January 16, 2019, FBOP officials transferred Longworth to the Federal Correctional Institution in Peterburg, Virginia. *Id.*, ¶ 38. The transfer order provides that on September 28, 2018, Longworth "incurred an incident

---

[4]  The amended complaint does not specify whether Haught reported the sexual abuse itself, or whether he reported that Beck was spending an inappropriate amount time alone with Longworth.

report, which resulted in an OIG investigation. The investigation has been concluded and it has been determined the [Longworth] can no longer be housed on the Butner Complex." *Id.*

Following Longworth's transfer and Beck's termination, she allegedly continued to harass and intimidate Longworth by sending him sexually explicit and threatening correspondence. *Id.*, ¶ 39. According to Longworth, "[t]he abuse was permitted to continue, and effectively sanctioned, by the deliberate indifference [] Mansukhani, Scarantino, Burrell, and Haught demonstrated to [Longworth's] rights. . . . [T]hese defendants knew of [] Beck's conduct, but failed to report or properly supervise [] Beck." *Id.*, ¶ 41. The abuse allegedly caused Longworth serious emotional distress and trauma. *Id.*, ¶ 42.

## SUMMARY OF ARGUMENT

The district court properly dismissed Longworth's Eighth Amendment claims as not cognizable under *Bivens*. Although extending *Bivens* has long been a "disfavored judicial activity," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), makes clear that a *Bivens* claim is unavailable "in all but the most unusual circumstances." *Egbert*, 142 S. Ct. at 1800. Even cases involving "parallel circumstances" to the three, decades-old cases where the Court has recognized a *Bivens* remedy warrant rigorous scrutiny under the Court's modern "analytic framework" for implied causes of action. *Id.* at 1809.

Longworth's claims cannot survive that framework. His *Bivens* allegations present a context that diverges meaningfully from past *Bivens* cases and raise multiple special factors suggesting that Congress is better equipped than the Judiciary to create this type of remedy. Consequently, this Court should affirm the district court's grant of Appellees' motions to dismiss.

# ARGUMENT

## I. STANDARD OF REVIEW.

This Court reviews a dismissal for failure to state a claim *de novo*, viewing the facts in the light most favorable to non-movant. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021). In so doing, the Court "may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court." *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (citing *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016)).

## II. THE DISTRICT COURT PROPERLY DISMISSED LONGWORTH'S EIGHTH AMENDMENT CLAIMS AS NOT COGNIZABLE UNDER *BIVENS*.

Longworth seeks to hold Appellees personally liable for money damages for alleged violations of the Eighth Amendment. Specifically, Longworth alleges he was sexually abused, and all Appellees "failed to protect him from a risk of harm" and Mansukhani and Scarantino "failed to supervise/train the officers responsible for the abuse." D.E. 71, at 9.

The district court properly dismissed these claims because the Supreme Court has not recognized a *Bivens* remedy under the facts pled and taken together, the relevant special factors—including alternative existing remedial processes and no private right of action under PREA and the PLRA—suggest hesitation in extending a *Bivens* remedy under the circumstances. D.E. 71.

### A.    *Egbert* and the *Bivens* Framework.

Generally speaking, constitutional violation claims against agents of the federal government fall under the Supreme Court case *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to the extent that *Bivens* and its progeny allow for such claims. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement." *Id.* The Supreme Court "has made clear" that not every constitutional violation alleged against a federal officer gives rise to an implied damages action. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Indeed, there are only three, decades-old cases in which the Court has recognized such a remedy: *Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). "After those decisions, however, the Court changed course." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Consistent with the Court's disapproval of expanding *Bivens*, the framework for assessing *Bivens* claims "places significant obstacles in the path to recognition of an implied cause of action." *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 358 (2021). "First, [courts must] ask whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1859-60). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if

there are 'special factors' indicating that the Judiciary is *at least arguably* less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1858) (emphasis added).

Recently, in *Egbert*, the Supreme Court issued several clarifications to this framework that multiply the obstacles a *Bivens* claimant faces. *Egbert* made clear that "recognizing a *Bivens* cause of action is an extraordinary act," thus courts have "a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief" no matter when a defendant raises the issue. *Egbert*, 142 S. Ct. at 1807 n.3 (2022) (cleaned up). In addition, because "potential special factors that previous *Bivens* cases did not consider" make a context "new," *id.* at 1803 (quoting *Abbasi*, 137 S. Ct. at 1860), the two-part *Bivens* analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

Finally, *Bivens*, *Davis*, and *Carlson* "predate[] [the Court's] current approach to implied causes of action" and therefore should carry "little weight." *Id.* at 1808. Relevant here, this means "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Davis*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809 (quoting *Abbasi*, 137 S. Ct. at 1859). Collectively, these principles underscore that a court *always* must analyze whether a *Bivens* claim should be allowed to proceed, and that analysis *always* must consider special factors regarding separation of powers. A *Bivens* remedy, therefore, will be unavailable "in most every case." *Id.* at 1803.

This case does not present the "unusual circumstances" in which a *Bivens* claim should be allowed to proceed. *Id.* at 1800. Whether this Court analyzes Longworth's claims under the two-step approach or simply asks the essential question of whether Congress is better equipped than the Judiciary to create this type of remedy, dismissal is warranted and the district court's decision should be affirmed.

### B.   Longworth's Claims Arise in a New *Bivens* Context.

Longworth's *Bivens* claims present new contexts because they diverge factually from the Court's three *Bivens* cases. Additionally, his claims raise special factors not considered in previous *Bivens* cases that render this a new *Bivens* context and counsel hesitation in extending a *Bivens* remedy.

To constitute a new context, a case need only be "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. The Court's understanding of a new context "is broad," *Hernandez*, 140 S. Ct. at 743, and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized *Bivens* contexts. *Abbasi*, 137 S. Ct. at 1865. In *Egbert*, for example, the Court affirmed the Ninth Circuit's holding that the respondent's Fourth Amendment claim presented a new context even though, as in *Bivens*, he alleged that a federal law enforcement agent entered his property without a

warrant and unlawfully seized him. 142 S. Ct. 1793. After *Egbert*, courts cannot assume a *Bivens* claim can proceed without a special factors analysis regardless of how similar it is to prior *Bivens* cases. *See id.* (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."). As this Court recently summarized:

> While not providing an exhaustive list of distinguishing factors, the [Supreme] Court has noted examples that would support finding a new context, such as (1) "uncertainty alone" as to whether allowing a *Bivens* claim would have systemwide consequences, *Egbert*, 142 S. Ct. at 1804; (2) a "new category of defendants," *Malesko*, 534 U.S. at 68, 122 S.Ct. 515; (3) a difference as small as the "rank of the officers involved," *Ziglar*, 137 S. Ct. at 1860; (4) the "statutory or other legal mandate under which the officer was operating," *id.*; (5) a "potential effect on foreign relations," *Hernandez*, 140 S. Ct. at 744, and "national security," *id.* at 746–47; (6) Congress's "repeatedly declin[ing] to authorize the award of damages" in the relevant context, *id.* at 747; and (7) the risk that "the burden and demand of litigation" would prevent Executive Officials "from devoting the time and effort required for the proper discharge of their duties," *Ziglar*, 137 S. Ct. at 1860.

*Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022); *see Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. March 3, 2023) (discussing special factors).

Here, Longworth's Eighth Amendment claims bear no resemblance to *Bivens*, 403 U.S. 388 (Fourth Amendment claim for warrantless search and seizure at the plaintiff's home), *Carlson*, 446 U.S. 14 (Eighth Amendment deliberate indifference to serious medical needs), or *Davis*, 442 U.S. 228 (Fifth Amendment equal protection claim for sex discrimination in employment).

Appellant argues Longworth's failure to protect claims do not present a "new context" because they are analogous to both *Carlson* and *Farmer*. Brief at 42-51. This Court recently rejected reliance on both cases in the context of an inmate Eighth Amendment failure to protect case. *See Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. March 3, 2023). In *Bulger*, an inmate's estate alleged BOP officers' "deliberate[] indifferen[ce] to the substantial risk of serious harm" that the "medically vulnerable inmate" faced in being sent to an "extremely violent" prison resulted in the inmate's being beaten to death by fellow inmates. *Bulger*, at 133, 137. The estate argued that its "failure to protect" and "failure to intervene" in prison housing assignment claims did "'not present a new *Bivens* context' because they fall within the class of *Bivens* cases acknowledged by the Supreme Court in *Carlson* and *Farmer v. Brennan*, 511 U.S. 825 (1994))." *Bulger*, at 137. This Court disagreed. *Id.* at 138.

### 1. *Carlson* does not support "no new context" in *Longworth*.

In *Carlson*, the Supreme Court "held that an inmate's estate could proceed on a claim for money damages against prison officials for allegedly violating the inmate's Eighth Amendment right to be free from deliberate indifference to his serious medical needs[.]" *Bulger*, at 136 (citing *Carlson*, 446 U.S. at 24–25). The deliberate indifference was failure "to provide competent medical care after an inmate suffered a severe asthma attack, allegedly leading

to the inmate's death." *Id.* The Supreme Court, however, "has made clear that [lower] courts should not interpret *Carlson* to apply outside the precise context at issue in that case[.]" *Id.*

In *Bulger*, this Court held the estate's claims to be "materially distinct" from those acknowledged in *Carlson* because they were not limited to "the precise context at issue" in *Carlson*. *Id.* This was so even though the estate alleged the inmate was "medically vulnerable" and the claims, like in *Carlson*, were pursuant to the Eighth Amendment. The holding in *Bulger* turned on the underlying claim—the inmate's death was alleged to have resulted from prisoner-on-prisoner violence and transfer to an "extremely violent" prison, not from incompetent medical care. *Id.* at 9. Hence, the Eighth Amendment failure to protect claim presented a new *Bivens* context distinct from the context "acknowledged" in *Carlson*. *Id.*

For the same reason, *Carlson* does not support Longworth's argument that his claims do not present new *Bivens* contexts. Longworth's claims patently are not limited to "the precise context at issue" in *Carlson*. *Bulger*, at 138. Instead, like *Bulger*, Longworth alleges injury from failure to protect and, in essence, failure to intervene (train/supervise), not from failure to provide adequate medical care as in *Carlson*. D.E. 71, at 9. Just as in *Bulger*, therefore,

Longworth's Eighth Amendment claims present a new *Bivens* context meaningfully distinct from the context "acknowledged" in *Carlson*. *Id.*

> In accord, the district court correctly held that Longworth's
>
> allegations of sexual assault and failure to protect from risk that a correctional officer would sexually assault an inmate 'bear little resemblance to' the medical claim at issue in *Carlson*. . . . The factual context here involves intentional sexual abuse by an FBOP employee and failure to report same, which is wholly different than the medical indifference claim in *Carlson*.

D.E. 71, at 9-10 (internal citations omitted).

Longworth's claims also are distinguishable from *Carlson*, thereby, fatally undermining his reliance on *Carlson* to demonstrate "no new" *Bivens* context. Longworth's claims also raise special factors not considered in *Carlson* that render his claims a new *Bivens* context *and* counsel hesitation in extending a *Bivens* remedy. The district court correctly held that Longworth's claims implicate separation of powers. Specifically, Longworth's claims "implicate statutory and FBOP policy provisions governing inmate allegations of sexual assault that were not at issue in *Carlson*[]" and "[t]he FBOP . . . is better situated than the court to create standards governing employee responsibilities and procedures when sexual abuse by another FBOP employee is suspected." D.E. 71, at 10. Longworth's failure to intervene (train/supervise) claims also "involve policy and supervisory decisions that differ from the medical

treatment claims at issue in *Carlson*[,]" thereby making them "meaningfully different that *Carlson*". D.E. 71, at 10.

For these reasons, Longworth's reliance on *Carlson* is misplaced. Materially distinct from the failure to provide adequate medical care in *Carlson*, Longworth's claims present a new *Bivens* context that mandates a special factors analysis prior to extending a *Bivens* remedy to Longworth.

> **2.** ***Farmer*** **is not a fourth** ***Bivens*** **context, so it does not support "no new context" in** ***Longworth.***

This Court has held that *Farmer* is not a fourth *Bivens* context "beyond the issues presented in *Bivens*, *Davis*, and *Carlson.*" *Bulger*, 62 F.4th at 138-39; *see Tate*, 54 F.4th at 847; *see also Mays v. Smith*, 70 F.4th 198, 203-04 (4th Cir. 2023).

"In *Farmer*, an inmate brought a *Bivens* suit pursuant to the Eighth Amendment against prison officials for allegedly failing to protect the inmate from a violent beating and rape, even though the officials knew that the prison had a 'violent environment' and the inmate was 'particularly vulnerable to sexual attack.'" *Bulger*, at 139. This Court found *Farmer* was not a recognized *Bivens* context for four reasons: the Court in *Farmer* "never addressed whether the claim was properly a *Bivens* claim[,]" "the parties did not brief the issue[,]" "the Court has never listed *Farmer* when compiling all of its *Bivens* cases[,]" and the Court has pronounced "that it 'has refused' to 'extend *Bivens* to any

new context' for 'the past 30 years,' which includes the time period it decided

*Farmer*."[5] *Bulger*, at 139.

Longworth's claims also are distinguishable from *Farmer*, thereby, undermining his reliance on *Farmer* to demonstrate "no new" *Bivens* context. As the district court correctly noted

> even if Farmer did recognize a new *Bivens* context, this case is meaningfully different than *Farmer*. In *Farmer*, the plaintiff alleged that FBOP corrections officers failed to protect her from a known risk of harm by housing her in a violent environment, where she was raped and beaten, despite her particular susceptibilities to abuse. 511 U.S. at 829–31. [Longworth] [] alleges FBOP officials failed to protect him from an assault by another FBOP employee, not other inmates. [Longworth] also does not allege that [] Beck presented a known risk of harm at the time he was assigned to the facilities department. In addition, allegations of sexual assault by another correctional officer raise significant concerns about correctional administration and security issues that are meaningfully different than standard failure to protect claims alleging abuse by other inmates, exemplified in *Farmer*. Accordingly, [Longworth's] Eighth Amendment claims present new contexts, notwithstanding Farmer. *See Abbasi*, 137 S. Ct. at 1859–60 (discussing meaningful difference standard); *Tun-Cos*, 922 F.3d at 523 (noting "a radical difference is not required").

D.E. 71, at 11-12.

---

[5]   Longworth relies on *Bistrian v. Levi*, 912 F.3d 79, 90-91 (3d Cir. 2018), which held that "prisoner-on-prisoner violence and failure to protect claims are not new contexts for *Bivens* claims[,]" *Bulger*, at 139, to support his argument that *Farmer* is a fourth *Bivens* context. Brief at 42-43. This Court rejected that exact argument in *Bulger*. *Bulger*, at 139.

For these reasons, *Farmer* does not support Longworth's argument that his claims do not present new *Bivens* contexts. Consequently, the Court must conduct a special factors analysis.

### C. Special Factors Counsel Against Allowing Longworth's Eighth Amendment Claims to Proceed.

At the second step of the analysis, the Court "consider[s] whether there are any special factors that might counsel hesitation in expanding *Bivens* remedies." *Dyer v. Smith*, 56 F.4th 271, 278 (4th Cir. 2022) (holding there were no available *Bivens* remedies in case involving TSA employees). *Abbasi* and *Egbert* make clear that a *Bivens* remedy will not be available if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18 (internal quotations omitted)). "[I]t is a significant step under separation-of-powers principles for a court to" accept Plaintiff's invitation to "create and enforce a cause of action for damages against federal officials." *Abbasi*, 137 S. Ct. at 1856. At bottom, as the Court has explained, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be Congress." *Id.*; *see also id.* at 1858.

In this case, set in the prison context—a legal arena in which Congress so often has legislated—there can be no doubt that this case presents "special factors" indicating that Congress is better suited than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *Egbert*, 142 S. Ct. at

1803 (quoting *Abbasi*, 137 S. Ct. at 1858). The special factors inquiry is broad-ranging and asks, "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S. Ct. at 1858). This threshold is "remarkably low." *Arar v. Ashcroft*, 585 F.3d 559, 573–74 (2d Cir. 2009). "Hesitation is 'counseled' whenever thoughtful discretion would pause even to consider." *Id.*; *see also Abbasi*, 137 S. Ct. at 1857–58. Therefore, "separation-of-powers principles are or should be central to the [special factors] analysis." *Abbasi*, 137 S. Ct. at 1857.

Special factors counseling hesitation that the Supreme Court has considered in the past include whether a *Bivens* action will have the effect of altering a federal agency's policies, *Abbasi*, 137 S. Ct. at 1860; whether there is an alternative remedial structure present in a certain case, *id.* at 1858; whether a *Bivens* action would require courts to interfere with sensitive governmental functions, *id.* at 1861–62; whether personal liability would have a chilling effect on the proper discharge of official duties, *id.* at 1863; whether Congress has regulated extensively in the field without creating a damages remedy, *id.* at 1849; *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988); whether the court can define a "workable cause of action" that does not require difficult line-drawing, *Wilkie*, 551 U.S. at 555–57; whether the plaintiff challenges actions that fall within the Government's enforcement power, *id.* at 560; and whether a new action would invite an onslaught of litigation, *id.* at 562.

20

Here, multiple special factors counsel against extending *Bivens* to Longworth's claims under these circumstances.

1. **Congressional Action in the Context of Prison Life has been "Frequent and Intense," Yet Congress has not Created a Damages Remedy for Federal Inmates and has Delegated Authority Over Administration of Federal Prisons and Discipline of BOP Employees to the Executive.**

The Supreme Court has explained that special factors may bar a new *Bivens* claim if congressional interest in the relevant area has been "frequent and intense," yet Congress never created an individual-capacity damages remedy, suggesting that Congress may disfavor the Judiciary creating one itself. *See Abbasi*, 137 S. Ct. at 1862 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)) (declining to extend *Bivens* remedy for unconstitutional conditions of confinement where Congress had passed significant anti-terrorism legislation after the September 11 attacks without creating a damages remedy). There is even greater cause for hesitation if Congress has also "designed its regulatory authority in a guarded way" by granting discretion over decision-making to an agency. *Id.* at 1858 (citing examples); *see also Wilkie*, 551 U.S. at 561 (rejecting *Bivens* remedy in part because Bureau of Land Management had "discretionary authority" regarding use of public land). Finally, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," another potential special factor that may "make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Abbasi*, 137 S. Ct. at 1858. All these

special factors apply in this case to counsel hesitation in extending a *Bivens* remedy to Longworth's claims.

Congress has legislated extensively regarding the rights and protections of incarcerated persons but has never created the remedy that Longworth seeks from this Court. That counsels hesitation. When Congress has legislated extensively on a topic but declined to create a damages remedy, "the silence of Congress is relevant" and suggests an intent *not* to create such a remedy. *See Abbasi*, 137 S. Ct. at 1862; *Bulger*, 62 F.4th at 141. Relatedly, Congress's decision to delegate authority to an agency and insulate the agency's decision-making from judicial review also "mak[es] it less likely that Congress would want the Judiciary to interfere" by authorizing a *Bivens* remedy. *Id.* at 1858.

Nearly all aspects of the maintenance of federal prison institutions and the treatment, rights, and grievance procedures of persons incarcerated there are regulated by statute, including conditions of confinement. For example, the BOP is required to place prisoners in facilities where "the prisoner's mental and medical health needs" can be met, 18 U.S.C. § 3621; to "provide for the safekeeping, care, and subsistence" of all prisoners, *id.* at § 4042(a)(2); and to provide rehabilitative programs, *id.* at § 4042(a)(3). Despite these mandates, Congress has never opted to create an individual capacity cause of action that lets federal prisoners sue BOP personnel when inmates perceive they fall short. Instead, Congress has delegated broad authority to the Attorney General over

"[t]he control and management of Federal penal and correctional institutions." *Id.* at § 4001(b)(1).[6]

    a. **Statutory remedy against state, not federal jailers.**

More than 150 years ago, Congress passed the Civil Rights Act of 1871 to create a private right of action against state officials for constitutional violations. *See* 42 U.S.C. § 1983. However, Congress never has created an analogous right of action against federal officials. *See Abbasi*, 137 S. Ct. at 1854. This remains the case even though the Supreme Court has not recognized a new *Bivens* remedy in nearly forty years and federal courts have for decades trended away from doing so.[7] *Abbasi*, 137 S. Ct. at 1856–57.

---

[6]   Notably, Congress has cabined the Attorney General's authority over state prisons to intervention in cases involving "egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm." 42 U.S.C. § 1997c(a)(1). This is in keeping with Congress's different treatment of state prisons—where federal oversight is more limited and prisoners therefore may file private constitutional claims under § 1983 to protect their federal rights—and federal prisons—where the federal government has direct control over institutions and has authority to implement its own safeguards.

[7]   *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . [W]e have abandoned that power").

23

### b. Congress Enacted the Prison Litigation Reform Act (PLRA) Without Creating a Damages Remedy.

Since deciding *Bivens*, rather than expand the scope of prisoner litigation, Congress passed the PLRA of 1995 to "limit litigation brought by prisoners." *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 171 (4th Cir. 1999); *see also Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999) (explaining that the PLRA is intended to "remove the federal district courts from the business of supervising the day-to-day operation" of prisons); *Bulger*, 62 F.4th at 141; *Mays*, 70 F.4th at 206. Though "frequently legist[ing] in the area of prisoner litigation, most notably with the [PLRA], [Congress] so far has declined to create an individual-capacity damages remedy for federal inmates." *Mays*, at 206. The PLRA was enacted "after the Supreme Court's three *Bivens* decisions—'made comprehensive changes to the way prisoner abuse claims must be brought in federal court[,]' . . . . [but] [i]mportantly, the [PLRA] 'does not provide for a standalone damages remedy against federal jailers[.]" *Mays*, at 206. It is this "silence that 'speaks volumes and counsels strongly against judicial usurpation of the legislative function' to create one." *Id.* (citing *Bulger*, 62 F.4th at 141) (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 527 (4th Cir. 2019)).

### c. Congress Enacted the Prison Rape Elimination Act (PREA) Without Creating a Damages Remedy.

Even when Congress has sought to address important prison problems, it has not used private actions to do so. For instance, Congress enacted the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. §§ 30301 *et seq.*, to, among other things, "protect the Eighth Amendment rights of Federal, State, and local

24

prisoners," 34 U.S.C § 30302(7), in light of Congressional findings that "[t]he high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution," 34 U.S.C. § 30301(13). Despite this grave context, the PREA did not create a private right of action for inmate victims against inattentive prison officials. D.E. 28, at ¶ 19; *see Herring v. S.C. Dep't of Corr.*, No. CV 1:20-2909-MBS-SVH, 2020 WL 4904823, at *2 (D.S.C. Aug. 20, 2020) ("it is well established that there is no private right of action under PREA.") (citing *Hill v. Hickman County Jail*, 2015 WL 5009301, *3 (M.D. Tenn. August 21, 2015)); *De'lonta v. Clarke*, No. 7:11-CV-00483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013); *Quatavious Bivens, also known as Quatavious Bernard Bivens, Plaintiff, v. Brittany Boyd, A.W. Duffy, Sgt. McClellan, Bryan Stirling, Defendants.*, No. CV92204553SALMHC, 2023 WL 6542259, at *3 (D.S.C. Mar. 22, 2023), <u>report and recommendation adopted sub nom.</u> <u>Bivens v. Boyd</u>, No. 9:22-CV-4553-SAL, 2023 WL 6540905 (D.S.C. Oct. 6, 2023) (citing *Byrd v. South Carolina Dep't of Corr.*, No. 5:11-3340-MGL, 2013 WL 5309759, at *11 (D.S.C. Sept. 19, 2013)).

Since 1948, Congress has explicitly delegated the protection, discipline, and housing of federal inmates to the Attorney General and the BOP. *See* 18 U.S.C. § 4042(a). Congress also has given the BOP exclusive authority to house inmates wherever it deems "appropriate and suitable" in light of concerns such as the nature of the inmate's offense and the types of facilities available. 18 U.S.C. § 3621(b). Congress has even precluded judicial interference in this process by stripping courts of jurisdiction "to review certain decisions made by

BOP officials" under the APA. *See* 18 U.S.C. § 3625. The Supreme Court thus observed that "Congress has given federal prison officials full discretion to control these conditions of confinement." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

In sum, Congress's frequent attention to prison administration and inmates' rights makes it both "relevant" and "telling" that Congress has never created private damages remedies for inmates like Longworth who claim sexual abuse. *Abbasi*, 137 S. Ct. at 1862 (where "[c]ongressional interest has been frequent and intense," the failure to create a damages remedy may be "more than mere oversight" and the "silence might be more than inadvertent"); *see also Tate*, 54 F.4th at 848; *Bulger*, 62 F.4th at 141. Congress has had opportunities to authorize a remedy for Longworth's proposed claims when legislating on multiple subjects—including conditions of confinement, prisoner litigation, rape elimination in prisons—but always has declined. This suggests that it would be inappropriate for this Court to act in Congress's place by implying a remedy.

### 2. Several Alternative Remedial Structures Exist for Addressing Longworth's Alleged Grievances.

The Supreme Court previously recognized *Bivens* remedies "chiefly because the plaintiff lacked any other remedy for the alleged constitutional deprivation." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001). "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154

(9th Cir. 2018). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens*" remedy. *Abbasi*, 137 S.Ct. at 1858 (citing *Wilkie*, 551 U.S. at 550). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. In the Supreme Court's words: "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863.

Both the Executive and Legislative Branches have "provided alternative remedies for aggrieved parties in [Longworth's] position that independently foreclose a *Bivens* action here." *Egbert*, 142 S. Ct. at 1806.

### a. BOP's Administrative Remedy Program

Twice recently this Court has found the BOP's Administrative Remedy Program ("ARP") an alternative remedial structure sufficient to counsel hesitation in extending a *Bivens* remedy in a new context. *See Bulger*, 62 F.4th at 140-41; *Mays*, 70 F.4th at 205. Under the ARP, inmates such as Longworth "have an 'alternative remedial structure' that allows them to seek equitable relief for issues related to confinement, discipline, and the like." *Mays*, at 205 (citing *Bulger*, 62 F.4th at 140 (quoting *Abbasi*, 582 U.S. at 137)); *see* 28 C.F.R. § 542.10; *see also Egbert*, 142 S. Ct. at 1806 (holding that the U.S. Border Patrol's grievance procedure "independently foreclose[d] a *Bivens* action" and citing BOP's ARP as a special factor that made a *Bivens* claim unavailable in *Malesko*, 534 U.S. at 74).

27

"As the Supreme Court has noted, the [ARP] Program provides a 'means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring.'" *Mays*, at 205 (citing *Malesko*, 534 U.S. at 74). "The [ARP] process is substantial; it contains its own statutes of limitations, filing procedures, and appeals process. . . . And prisoners may retain attorneys for assistance with the process." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020). For situations determined to "threaten[] the inmate's immediate health or welfare," the warden must respond to a grievance within three days. 28 C.F.R. § 542.18. Notably, with respect to federal incarcerated persons, by adding an administrative exhaustion requirement to the PLRA, *see* 42 U.S.C. § 1997e(a), Congress has incorporated the ARP into its scheme for resolving inmate disputes and decreasing the amount of litigation emanating from prisons. The ARP thus bears the endorsement of both the BOP and Congress as the proper means of addressing the complaints of federal inmates.

It is of little consequence that Longworth alleges he exhausted the inmate grievance process as required by the Prison Litigation Reform Act (PLRA) in this case and did not receive the desired result. Brief at 27, fn 6. "Although 'the ARP does not include a money damages remedy,' inmates may file 'an administrative grievance' with the BOP or seek 'an injunction' in federal court" to address their concerns. *Bulger*, at 140. Though the ARP "does not provide a damages remedy as a *Bivens* claim would," *Mays*, at 205, and the remedy may be unavailable in particular circumstances (*i.e.* insufficient time to

engage the remedies offered), *Bulger*, at 141, "'the relevant question 'is not what remedy the court should provide for a wrong that would otherwise go unredressed' but instead 'whether an elaborate remedial system should be augmented by the creation of a new judicial remedy.'" *Mays*, at 205 (citing *Tun-Cos*, 922 F.3d at 527).

Further, the Supreme Court repeatedly has explained, with respect to alternative processes, that "the absence of relief 'does not by any means necessarily imply that courts should award money damages.'" *Egbert*, 142 S. Ct. at 1808 (quoting *Schweiker*, 487 U.S. at 421). Rather, "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* at 1806. Under the ARP, when an administrative grievance is denied, prisoners have the option of seeking injunctive relief through a judicial action. 18 U.S.C § 3626(a)(2); *see Abbasi*, 137 S. Ct. at 1862 (observing that the ability to pursue injunctive relief for abuses in the prison setting is a special factor); *see also United States v. Stanley*, 483 U.S. 669, 690 (1987) (official practices causing ongoing unconstitutional harms can be "enjoined if and when discovered"); *Malesko*, 534 U.S. at 74 (stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); *Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution").

The ARP, which was available to Longworth, is sufficient by itself to counsel hesitation in extending *Bivens* to provide a remedy in this case. *See Bulger*, at 142 ("Because each special factor independently presents a 'sound reason[ ] to think Congress might doubt the efficacy or necessity of a damages remedy' in this new context, *Abbasi*, 137 S. Ct. at 1858, we affirm the district court's order dismissing Appellant's *Bivens* claims.").

### b. *Habeas* motion under 28 U.S.C. § 2241

Conduct that may have affected Longworth's conditions of confinement also may have been actionable in *habeas corpus* pursuant to 28 U.S.C. § 2241.

### c. Tort Claim

To the extent there is an analogous tort, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, provides another alternative process that allows inmates to redress harm related to conditions of confinement. Here, Longworth pursues a tort claim against the alleged assailant, Beck. D.E. 71, at 14. A negligence claim under the FTCA will often provide an inmate's best option to recover damages. While *Bivens* found that the interests protected by "state laws regulating trespass and the invasion of privacy" were "inconsistent or even hostile" to the Fourth Amendment's protections, 403 U.S. at 394, the Court explained in *Malesko* that "such logic does not apply" when a plaintiff can assert negligence in lieu of an Eighth Amendment claim, 534 U.S. at 73-74.

Between the ARP, injunctive relief, and the FTCA, inmates in Longworth's position have multiple alternative processes to protect their interest in their conditions of confinement.

### d. Government Internal Employee Discipline Processes

In addition to these inmate-initiated processes, the government has internal processes for disciplining employee misconduct. Employees of the Department of Justice, which includes the BOP, are required to report "waste, fraud, abuse, and corruption," 5 C.F.R. § 2635.101(b)(11), and "serious administrative misconduct" by other employees, 28 C.F.R. § 45.11(b). Violations can lead to "corrective or disciplinary action" by the agency. 5 C.F.R. § 2635.106.

In sum, each alternative remedy, standing alone, "amounts to a convincing reason for the [Court] to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550; *Dyer*, 56 F.4th at 280; *see also Crowder v. Jones*, No. 14-cv-00202, 2017 WL 5889717, at *3 (S.D. In. Nov. 29, 2017) (denying *Bivens* remedy due to alternative remedies alone). When considered in the aggregate along with the other special factors, they clearly counsel against extending *Bivens* as Longworth proposes here.

### 3. Implying *Bivens* Remedies Would Interfere with Sensitive Government Functions and Raise Separation-of-Powers Concerns.

The Supreme Court has made clear that courts should avoid interfering with the delicate process of prison administration. "Running a prison is an

inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). "Prison administration is . . . a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Id*. at 85; *Tate*, 54 F.4th at 848. Because "separation-of-powers principles are or should be central to the analysis" of whether to imply a *Bivens* remedy, *Abbasi*, 137 S. Ct. at 1857, these factors should cause the court to hesitate before implying any new *Bivens* remedies in the federal prison context.

### 4. Authorizing a *Bivens* Claim of This Nature Would Burden Government Operations Systemwide.

The burden that new *Bivens* remedies impose on governmental operations also counsels hesitation. *See Mays*, 70 F.4th at 206. This Court must consider the increased burden it would place on government operations for this Court—or any court—to authorize a damages remedy in a context that deviates even slightly from *Bivens*, *Davis*, or *Carlson*. As *Egbert* explained, "Congress is far more competent than the Judiciary" to weigh policy considerations such as "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide" of implying a damages remedy. 142 S. Ct. at 1802 (cleaned up); *Tate*, 54 F.4th at 848. Indeed, "[e]ven in a particular case, a court likely cannot predict the 'systemwide'

consequences of recognizing a cause of action under *Bivens*." *Id.* at 1803 (quoting *Abbasi*, 137 S. Ct., at 1858). "That uncertainty alone is a special factor that forecloses relief." *Id.*; *see also Earle*, 990 F.3d at 781 (declining to recognize *Bivens* remedy where doing so "would work a significant intrusion into an area of prison management that demands quick response and flexibility"); *Callahan*, 965 F.3d at 524 (recognizing that "[p]rison-based claims . . . present a risk of interference with prison administration[,]" which counsels in favor of judicial restraint in creating a new *Bivens* remedy).

The Supreme Court has long recognized the "substantial social costs" imposed by individual capacity suits against federal employees. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). This factor is especially important in the prison context, where "problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 541 (1979). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*

Additionally, the BOP already faces staffing shortages, in addition to heavy workloads. The agency employs just 34,596 employees to oversee and protect an inmate population of 157,987 inmates, *see* Fed. Bureau of Prisons,

*About Our Agency*, https://www.bop.gov/about/agency/ (last visited October 18, 2023), and to operate 122 institutions nationwide, *see* Federal Bureau of Prisons, *About Our Facilities*, https://www.bop.gov/about/facilities/federal-_prisons.jsp (last visited October 18, 2023). With so many inmates in custody, some inmates will have complaints. Longworth's complaint and its substantial differences with *Carlson* illustrate the vast variety of claims that can arise in this context and the different types of remedial processes that could be effective. Whether and when these disputes should give rise to an individual-capacity damages claim is a nuanced policy question that should be decided by Congress, not the courts.

Creation of new *Bivens* remedies in the context Longworth proposes would divert already scarce resources away from the BOP's central mission. At the same time, the specter of individual liability could make recruiting qualified prison officials more difficult. Further, prison officials are tasked with imposing rules on persons with demonstrated disdain for authority. This dynamic can naturally breed conflict and resentment, which increases the likelihood of frivolous and vindictive lawsuits. *See Cruz v. Beto,* 405 U.S. 319, 326-27 (1972) (Rehnquist, C.J., dissenting) (inmates "stand[] to gain something and lose nothing from frivolous complaints"); *Tate*, 54 F.4th at 848. Courts should be particularly hesitant to imply a *Bivens* remedy in the prison context in order to prevent routine complaints about prison life from turning into costly federal damages actions.

Finally, *Bivens* lawsuits impose substantial burdens on government operations. The BOP and Department of Justice devote significant resources to defending prison officials, and the courts must contend with a throng of cases. On a system-wide basis, the diversion of BOP resources, the likelihood of frivolous claims, and the costs of litigation would have deleterious effects on government operations if the Court implies *Bivens* remedies for Longworth's claims.

### 5. Authorizing a New *Bivens* Claim would have a Chilling Effect.

The chilling effect of a new *Bivens* remedy is another special factor. The threat of personal liability would "dampen the ardor of all but the most resolute" prison officials "in the unflinching discharge of their duties." *Harlow*, 457 U.S. at 814. Officials "might refrain from taking urgent and lawful action in a time of crisis." *Abbasi*, 137 S. Ct. at 1863; *see De La Paz v. Coy*, 786 F.3d 367, 379 (5th Cir. 2015) ("Faced with a threat to his checkbook from suits based on evolving and uncertain law, the officer may too readily shirk his duty"). This is particularly problematic in the prison context, where officials must make quick decisions for the safety of inmates and staff without the fear that every decision could land them in court with their personal assets on the line. *Dyer*, 56 F.4th at 280-81 (declining to extend *Bivens* remedy and noting that "creating a cause of action against TSA agents could 'increase the probability that a TSA agent would hesitate in making split-second decisions about 281 suspicious passengers' or disruptions at security checkpoints" (quoting *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017))). Officials

cannot perform their duties timidly, which personal liability might counsel them to do.

### 6. Longworth Proposes an Unworkable Category of *Bivens* Litigation.

The difficulty of fashioning a workable remedy is another special factor. Longworth asks the Court to recognize a damages action predicated on subjective, fact intensive assessments, such as how much alone time an inmate can spend with a BOP employee; whether a glance can constitute sexual harassment; and what tasks are appropriate for inmate work assignments. Doing so would bring countless exercises of discretion by prison officials "within the *Bivens* regime, and across this enormous swath of potential litigation would hover the difficulty of devising a . . . standard that could guide an employee's conduct." *Wilkie*, 551 U.S. at 561.

Furthermore, Longworth's claims would be especially costly to administer. Each requires exploration into the state of mind of each of the prison officials involved. "[B]ecause an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on improper intent may be less amenable to summary disposition." *Crawford-El v. Britton*, 523 U.S. 574, 584–85 (1998). In effect, Longworth's claims risk devolving into proverbial "swearing contests," often requiring trials to resolve.

### 7. *Bivens* Remedies are Not Necessary to Deter Official Misconduct.

Declining to recognize a *Bivens* remedy here does not mean that misconduct by federal officials will go unchecked. As discussed above in Section II.C.1, Longworth has recourse to alternative injunctive remedies that could allow him to access the federal court system. The BOP also offers an administrative remedy program that permits inmates to report official misconduct all the way up to the BOP's Central Office in Washington. *See* 28 C.F.R. § 542.15. Moreover, "criminal investigations and prosecutions are already a deterrent" to misconduct. *Hernandez v. Mesa*, 885 F.3d 811, 821 (5th Cir. 2018). So too is the threat of an internal investigation by the BOP's Office of Internal Affairs or the Department of Justice's Office of the Inspector General. *See Abbasi*, 137 S. Ct. at 1862 (noting that Inspector General has investigated post-9/11 conditions of confinement).

In summary, courts consider special factors in the aggregate. *See Chappell v. Wallace*, 462 U.S. 296, 304 (1983) ("Taken together" these concerns "constitute 'special factors'"); *Abbasi*, 137 S. Ct. at 1857–58. The special factors set forth above more than suffice to "cause a court to hesitate" before committing the "disfavored judicial activity" of extending *Bivens* to these contexts. *See Abbasi*, 137 S. Ct. at 1857–58; *Arar,* 585 F.3d at 574 (threshold is "remarkably low").

## **<u>CONCLUSION</u>**

The district court properly granted Appellees' motions to dismiss the Eighth Amendment claims. Longworth's Eighth amendment claims are not cognizable under *Bivens*. The district court's judgment should be affirmed.

No oral argument is necessary.

Respectfully submitted, this 31st day of October 2023.

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:   */s/ Sharon C. Wilson*
SHARON C. WLSON
*Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: 919-856-4530

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ☐  _____  Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ☒  <u>8,773</u>  Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B))*.

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.


                                        */s/ Sharon C. Wilson*
                                        Sharon C. Wilson
                                        *Assistant United States Attorney*